UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | | |
|---|---|---|
| ANTHONY MCHUGH, | ) | Case No. |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| MAGICAL CRUISE | ) | |
| COMPANY, LTD., | ) | |
| A Foreign corporation, d/b/a | ) | |
| DISNEY CRUISE LINE, | ) | |
| Defendant. | ) | |

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW, Plaintiff, ANTHONY MCHUGH (hereinafter "Plaintiff"), by and through his undersigned counsel, and states the following for his Complaint against Defendant, MAGICAL CRUISE COMPANY, LTD., d/b/a DISNEY CRUISE LINE (hereinafter "Defendant"):

## PARTIES, JURISDICTION, AND VENUE

1.      This is an action brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000 (e)(3)(a), 29 U.S.C. §623(a), 42 U.S.C. § 1211, *et seq*, 28 U.S.C. §§ 1331 and 1337, for (1) unlawful gender discrimination in violation of Title VII of the Civil Rights Act of 1964, (2) unlawful age discrimination in violation of the Age Discrimination in Employment Act of 1967, (3) failure to accommodate for a known disability in violation of the Americans with Disabilities Act, (4) retaliation in violation of Title VII, and (5) negligent supervision.

2.      The Plaintiff is a resident of Orange County, Florida.

3.      Defendant, MAGICAL CRUISE COMPANY, LTD., is a Foreign corporation based in the United Kingdom that does business in the State of Florida under the Fictitious Name, Disney Cruise Line.

4.     Plaintiff was employed by Defendant (or its related company, Walt Disney Travel Company) beginning April 15, 1999.

5.     From March, 2003, and through and including February 14, 2017 Plaintiff was employed by Defendant, Magical Cruise Company, Ltd.

6.     Plaintiff's title on the date of discharge from Defendant was Labor Analyst.

7.     During his employment with Defendant, Plaintiff was subjected to various offensive behavior, in violation of 42 USC § 2000(e).

8.     Venue is proper in the Middle District of Florida, as the cause of action herein accrued in the Middle District of Florida.

9.     All conditions precedent to the filing of this action have occurred, been waived, or their performance is otherwise excused, specifically including an exhaustion of administrative remedies. Plaintiff has received a "right to sue letter" from the Equal Employment Opportunity Commission (a copy of which is attached hereto as Exhibit "A") and this action is timely brought.

10.    As a result of the Defendant's actions, Plaintiff has retained the undersigned counsel to represent him in this instant action, and is obligated to pay the undersigned a reasonable fee.

## GENERAL ALLEGATIONS COMMON TO ALL COUNTS

11.    In April, 1999, Plaintiff accepted a position with a predecessor of Defendant, namely Walt Disney Travel Company.

12.    At all relevant times, Plaintiff excelled at his job, as evidenced by "Clearly Outstanding" evaluation while under the Walt Disney Travel Company name.  Said Clearly Outstanding evaluation was the highest attainable evaluation possible.

13.    Over the past ten years, Plaintiff determined that the average ratio of employees in

the Defendant's work force was 40% male to 60% female at the Disney Cruise Line division of Defendant.

14.     Over the last ten years, every executive level employee of the Defendant that reported directly to the Vice President (a female), was comprised of the female gender and all Senior Managers (and Leaders of Leaders) that reported directly to the Director (a female) of Defendant were also exclusively female.  During this time period the male to female management personnel ratio did not reflect the gender composition of the work force that management oversaw.

15.     In approximately 2016, Plaintiff's Senior Manager (a female under age 40 and less qualified than Plaintiff for the position) began engaging in a campaign of conduct inappropriate in the workplace. Early after the Senior Manager's promotion over Plaintiff, his Senior Manager would brag until Plaintiff was red with embarrassment about the married men the Senior Manager had slept with.  Plaintiff's Senior Manager would intentionally describe with vivid detail her lovers' genitalia.  Further, the Senior Manager sought to embarrass Plaintiff by sharing with the Plaintiff the various sexual acts that she participated in with her many partners.   In addition, Plaintiff's Senior Manager described to Plaintiff "sex rooms" that she would book on Disney Cruise Ships where she would entertain partners.

16.     The discussions described in Paragraph 15 above were conducted as a part of the weekly "one on one" meetings that the Senior Manager required Plaintiff to attend for coaching, development enrichment and feedback purposes.  Plaintiff expressed to the Senior Manager on multiple occasions that he was not comfortable with the sexual nature of the conversations.

17.     The private information of a sexual nature that the Senior Manager shared with Plaintiff made it difficult for the Plaintiff to perform his work duties as he worked with several of the men the Senior Manager claimed she was engaged in sexual relationships.  Even more difficult

for Plaintiff was the fact that unknowing wives of the men at issue were also employed in the same office building as Plaintiff and the Senior Manager's alleged sexual conquests.

18.     Staff as well as Plaintiff's Senior Manager routinely bullied Plaintiff. Plaintiff was regularly mocked, was referred to as a "stuffy old fart" by the Senior Manager and staff. The Senior Manager not only failed to reprimand staff that mocked Plaintiff, but she would join in the bullying and belittling which led to humiliation of the Plaintiff.

19.     The Senior Manager and staff would make numerous disparaging remarks about and took actions against the Plaintiff which created a hostile work environment for the Plaintiff.

20.     Plaintiff's Senior Manager took unwarranted actions intended to further demean the Plaintiff. Plaintiff had more seniority than his Manager, yet she chose to use her position of power over the Plaintiff to move Plaintiff from his second-floor window office to a repurposed windowless janitor's closet for his work space.   Plaintiff asserts that the move was made with malice to further hurt and embarrass Plaintiff in front of his co-workers.  The move resulted in violation of Defendant's Harassment policies that forbid intentional targeted isolation.   See Defendant's Prohibition of Harassment Policies attached hereto as Exhibit "B".

21.     Every female Labor Leader under 40 years of age were provided company iPhones and Apple tablets. Plaintiff was not provided this convenience reserved to those under 40 years of age. Plaintiff was advised that the devices were only provided to those "who understood the technology". Yet, Plaintiff was expected to conduct business using his own iPhone when necessary. The Senior Manager and Defendant treated Plaintiff differently from the younger, female employees.

22.     Plaintiff's Senior Manager would steal Plaintiff's legal prescription medications from Plaintiff. The Senior Manager solicited the illegal drug, Ecstasy, from a peer of the Plaintiff

and others.  She made it clear that the drugs were to be provided to the Senior Manager for those beneath her to retain their jobs.   Plaintiff did observe that one employee did supply the office Senior Manager with Ecstasy on more than one occasion.

23.     Obviously outraged at this conduct, Plaintiff voiced concerns over his treatment by his Senior Manager to the women of the Human Resources Department and a female representative of Employee Relations.   When Plaintiff expressed his concerns in accordance with Disney Cruise Line policies, Plaintiff was interrogated by two female licensed attorneys.   Plaintiff was not allowed to have counsel present for the interrogation.

24.     Plaintiff was not informed that the persons conducting the investigation for Defendant were licensed attorneys whose purpose was designed to find that Plaintiff was at fault for the misconduct of his Senior Manager.  The investigation was not conducted in an independent manner but was a targeted investigation to find fault of the Plaintiff and to justify his termination.

25.     Plaintiff's Senior Manager regularly implemented rules differently for men and women.  Plaintiff possessed the most experience in his employment division.  Nevertheless, he was routinely passed over for promotions.  Plaintiff was unquestionably more qualified than the female workers that were consistently promoted ahead of him.

26.     The conduct of Plaintiff's Senior Manager went unaddressed, and Plaintiff implored Defendant to address the Senior Manager's egregious and pervasive behavior.

27.     On February 14, 2017, the Plaintiff was wrongfully discharged after he brought the Senior Manager's misconduct to the attention of Human Resources as directed in Defendant policies.  Plaintiff had come forth in accordance with Defendant's Policies to alert Defendant to the fact that Plaintiff's Senior Manager was stealing legally prescribed medication from the Plaintiff.

28.     Plaintiff further detailed the history and hostile work environment that was present as Plaintiff's Senior Manager sought Plaintiff's legally prescribed medication from the Plaintiff as a condition to allow Plaintiff to continue to work for Defendant.

29.     Defendant terminated the Plaintiff in retaliation for his bringing to the attention of Defendant the inappropriate and illegal conduct of the Plaintiff's immediate supervisor.

30.     In addition, at the time of termination, Defendant wrongly accused the Plaintiff of illegally using substances.   Defendant was lawfully prescribed medications needed for his enjoyment of life and which allowed him to be a productive member of Defendant's work force. Plaintiff's mediations were prescribed to address Plaintiff's disabilities, Attention Deficit Disorder ("ADD") and General Anxiety Disorder ("GAD").

31.     Plaintiff could not report the behavior earlier as his Senior Manager had repeatedly threatened that Plaintiff would be fired if he reported her for the Manager's behavior.  Plaintiff was concerned that the Senior Manager could terminate Plaintiff as the Senior Manager had a close personal relationship with the Director of Defendant, each of whom were single women.

32.     Plaintiff was rightfully concerned with preserving his employment in light of the threats that his Senior Manager made to him.

33.     Defendant had a specific non-retaliation policy in place for the reporting of illegal substance use by employees/supervisors at the work place. See Exhibit B attached.

34.     Despite the non-retaliation policy and in response to Plaintiff coming forward regarding his Senior Manager's improper conduct, Defendant terminated the Plaintiff on February 14, 2017.

35.     After the termination, Plaintiff was replaced by a younger female employee with very little experience, whose performance was lacking.  In addition to replacing Plaintiff with a

younger less-qualified employee, the Defendant gave the replacement a higher salary and a new "Senior" title.   The higher pay and Senior title were denied to Plaintiff during Plaintiff's employment with Defendant even though he performed the same duties that the less-experienced, less-qualified female employee provided to Defendant.

36.   During Plaintiff's tenure, every Leader in Plaintiff's department, the Labor Team, and over the age of 40 was systematically terminated or resigned.   Defendant filled all open positions exclusively with individuals under the age of 40.

37.   The behavior, as well as other behavior, occurred by and in the presence of others, that will be more fully developed in discovery, indicating that Defendant promoted a hostile work environment that is completely unacceptable in a civilized society.

## COUNT I – VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
## (HOSTILE WORK ENVIRONMENT)

38.   Plaintiff realleges paragraphs 1 through 37 above, as though fully set forth herein.

39.   This is an action for violation of Title VII of the Civil Rights Act of 1964, 42 USC § 2000(e).

40.   Plaintiff is a male that was working in an environment represented nearly entirely by women, and as such, Plaintiff is a member of a protected class.

41.   By being subjected to extreme and outrageous behavior, sexual in nature, Plaintiff suffered intentional discrimination because of his protected class.

42.   The discrimination was both pervasive and regular. In fact, the discrimination was so pervasive and severe as to alter the conditions of the Plaintiff's employment, and create an abusive working environment.

43.   The acts and discussions of Plaintiff's Senior Manager as described in ¶¶s 15-17 and as otherwise contained herein were offensive to Plaintiff.   The conduct created a sexually

charged workplace which affected the Plaintiff negatively.

44.     The discrimination displayed in the Defendant's office detrimentally affected the Plaintiff.

45.     The discrimination would detrimentally affect a reasonable person of the same protected class in the same employment position as the Plaintiff.

46.     Defendant is liable, through the well-established principle of *respondeat superior*, for the actions of its agents that subjected the Plaintiff to the discrimination complained of.

**WHEREFORE**, Plaintiff demands judgment against Defendant for:

i.      Injunctive relief directing Defendant to cease and desist from all acts of retaliation against employees who engage in statutorily protected acts;

ii.     Back pay and all other benefits, perquisites and other compensation for employment which Plaintiff would have received had he maintained his position with the Defendant, plus interest, including but not limited to lost salary and bonuses;

iii.    Front pay, including raises, benefits, insurance costs, benefit costs, and retirement benefits;

iv.     Reimbursement of all expenses and financial losses the Plaintiff has incurred as a result of Defendant's actions;

v.      Declaratory relief declaring the acts and practices of the Defendant to be in violation of the statute cited above;

vi.     Reasonable attorney's fees plus costs;

vii.    Punitive damages;

viii.   Compensatory damages; and

Such other relief as this Court shall deem appropriate.

## COUNT II – VIOLATION OF AGE DISCRIMINATION
## IN EMPLOYMENT ACT OF 1967

47.     Plaintiff realleges paragraphs 1 through 37 above, as though fully set forth herein.

48.     This is an action for violation of the Age Discrimination in Employment Act of 1967, 29 USC § 623(a) (hereafter "ADEA").

49.     Plaintiff is a male over the age of 40 at the time that Defendant wrongfully discharged him, and as such, Plaintiff is a protected individual under the ADEA.

50.     Defendant employs more than 20 employees.

51.     As noted in ¶¶s 15-21, 25 and 35, Plaintiff was discriminated against in terms of his compensations terms, conditions and/or privileges of employment with the Defendant.

52.     Further, Plaintiff was segregated from the general workforce by acts of the Defendant as alleged at ¶ 20 herein.

53.     By being subjected to acts related to the Plaintiff's age, Plaintiff suffered intentional discrimination.

54.     Defendant is liable, through the well-established principle of *respondeat superior*, for the actions of its agents that subjected the Plaintiff to the discrimination complained of.

**WHEREFORE**, Plaintiff demands judgment against Defendant for:

i.      Injunctive relief directing Defendant to cease and desist from all acts of retaliation against employees who engage in statutorily protected acts;

ii.     Back pay and all other benefits, perquisites and other compensation for employment which Plaintiff would have received had he maintained his position with the Defendant, plus interest, including but not limited to lost salary and bonuses;

iii.     Front pay, including raises, benefits, insurance costs, benefit costs, and retirement benefits;

iv.     Reimbursement of all expenses and financial losses the Plaintiff has incurred as a result of Defendant's actions;

v.     Declaratory relief declaring the acts and practices of the Defendant to be in violation of the statute cited above;

vi.     Liquidated damages as provided in an amount equal to the net back pay award;

vii.     Reinstatement;

viii.     Reasonable attorney's fees plus costs; and

Such other relief as this Court shall deem appropriate.

## COUNT III – VIOLATION OF THE ADA

55.     Plaintiff realleges paragraphs 1 through 37 above, as though fully set forth herein.

56.     Plaintiff was an "employee" of the Defendant within the meaning of 42 U.S.C. § 1211 *et seq*. during his entire tenure with the Defendant.

57.     Defendant was a covered entity at all times relevant to this suit within the meaning of 42 U.S.C. § 1211 *et seq*.

58.     Plaintiff worked as a Labor Analyst for Defendant regarding Defendant's Disney Cruise Line in Celebration, Florida.

59.     At the time that Plaintiff began his employment with Defendant, Plaintiff suffered from attention deficit disorder ("ADD") and acute General Anxiety Disorder ("GAD"). As such, at all times relevant to this Complaint, Plaintiff was a person with a disability under the meaning of the ADA.

60.     Plaintiff's disability involves one or more major life activities.

61.     Plaintiff's disability is permanent in nature, and Plaintiff suffered from it during his entire tenure with the Defendant.  Plaintiff's work suffered when his Senior Manager would take needed medication from Plaintiff.

62.     Defendant, as a covered entity as described above, had notice of Plaintiff's disability.

63.     With reasonable accommodation, Plaintiff could perform the essential functions of the job at issue.

64.     Plaintiff complained to multiple principals of Defendant during his tenure about his disability, to no avail.

65.     Defendant, as Plaintiff's employer, refused to make such accommodations.

66.     Defendant failed to seriously address Plaintiff's requests and pleas for assistance, and failed to reasonably accommodate his disability.

**WHEREFORE**, Plaintiff demands judgment against Defendant for:

i.     Injunctive relief directing Defendant to cease and desist from all acts of retaliation against employees who engage in statutorily protected acts;

ii.    Back pay and all other benefits, perquisites and other compensation for employment which Plaintiff would have received had he maintained his position with the Defendant, plus interest, including but not limited to lost salary and bonuses;

iii.   Front pay, including raises, benefits, insurance costs, benefit costs, and retirement benefits;

iv.    Reimbursement of all expenses and financial losses the Plaintiff has incurred as a result of Defendant's actions;

v.    Declaratory relief declaring the acts and practices of the Defendant to be in violation of the statute cited above;

vi.   Reasonable attorney's fees plus costs;

vii.  Punitive damages;

viii. Compensatory damages; and

Such other relief as this Court shall deem appropriate.

## COUNT IV – RETALIATION

67.    Plaintiff realleges paragraphs 1 through 37 above, as though fully set forth herein.

68.    Plaintiff was an employee of the Defendant during his entire tenure with the Defendant.

69.    Plaintiff sought to participate in a statutorily-protected activity in that Plaintiff raised the issues of gender discrimination with Defendant through the appropriate channels within Defendant's hierarchy.

70.    Further, Plaintiff sought out the Defendant to rectify a discriminatory practice of Plaintiff's Senior Manager who was taking Plaintiff's medications from him without Plaintiff's permission.

71.    Rather than implementing Defendant's non-retaliatory policy, Defendant embarked upon a course of conduct that resulted in an adverse employment action, namely Plaintiff's termination from Defendant.  See Exhibit "B".

72.    The action of the Defendant constitutes retaliation for the Plaintiff's legitimate request to have his Senior Manager investigated and disciplined.

73.     Plaintiff's termination was the product of Plaintiff seeking to have the Defendant investigate his Senior Manager's actions and the hostile work environment that was present in Plaintiff's department.

**WHEREFORE**, Plaintiff demands judgment against Defendant for:

i.     Injunctive relief directing Defendant to cease and desist from all acts of retaliation against employees who engage in statutorily protected acts;

ii.    Back pay and all other benefits, perquisites and other compensation for employment which Plaintiff would have received had he maintained his position with the Defendant, plus interest, including but not limited to lost salary and bonuses;

iii.   Front pay, including raises, benefits, insurance costs, benefit costs, and retirement benefits;

iv.    Reimbursement of all expenses and financial losses the Plaintiff has incurred as a result of Defendant's actions;

v.     Declaratory relief declaring the acts and practices of the Defendant to be in violation of the statute cited above;

vi.    Reasonable attorney's fees plus costs;

vii.   Punitive damages;

viii.  Compensatory damages; and

Such other relief as this Court shall deem appropriate.

## COUNT V – NEGLIGENT SUPERVISION

74.    Plaintiff realleges paragraphs 1 through 37 above, as though fully set forth herein.

75. Defendant owed a duty to Plaintiff as a result of, *inter alia*, the employment relationship, as more fully set forth above, between Defendant and Plaintiff.

76. Prior to hiring Plaintiff's Senior Manager and promoting her to a position where she had the ability to cause harm to other employees, Defendant knew, or should have known, of Plaintiff's Senior Manager's proclivity towards discrimination and her unfitness/inability to conform her behavior to acceptable legal standards for the workplace environment, which posed a risk to Defendant's employees.

77. Defendant, nonetheless, failed to act with ordinary care in properly training/supervising Plaintiff's Manager, or satisfactorily remedy her unfitness or unsuitability to be employed in a predominantly female work environment.

78. Defendant was required, or should have been required, to appropriately train and supervise Plaintiff's Manager in her employment. It was unreasonable for Defendant to fail to train and supervise Plaintiff's Manager in a predominantly female environment.

79. Defendant breached its duty to Plaintiff and has negligently supervised Plaintiff's Manager.

80. As a proximate result of Defendant's negligent supervision of Plaintiff's Manager, Plaintiff has suffered damages, including physical and severe emotional distress.

**WHEREFORE**, Plaintiff respectfully demands that this Honorable Court enter its judgment in favor of the Plaintiff and against Defendant in an amount consistent with the evidence, together with the costs of this litigation, interest, and all other relief as this Court deems proper.

Case 6:18-cv-01913-ACC-KRS   Document 1   Filed 11/07/18   Page 15 of 21 PageID 15

**DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury on all issues so triable as a matter of right.

Respectfully submitted,
NeJame Law, P.A.

By: *s/ John W. Zielinski*
Florida Bar No. 527661
189 S. Orange Avenue
Suite 1800
Orlando, Florida 32801
Telephone: (407) 500-0000
Facsimile: (407) 802-1431
john@nejamelaw.com
civilservice@nejamelaw.com
courtnay@nejamellaw.com
Attorneys for Plaintiff

EEOC Form 161 (11/16)

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Anthony J. McHugh<br>1118  43rd Street<br>Orlando, FL 32839 | From: | Tampa Field Office<br>501 East Polk Street<br>Room 1000<br>Tampa, FL 33602 |
|---|---|---|---|

|  | ☐ | On behalf of person(s) aggrieved whose identity is<br>CONFIDENTIAL (29 CFR §1601.7(a)) | | |
|---|---|---|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 510-2017-03402 | Pedro A. Hernandez,<br>Investigator | (813) 202-7938 |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed <u>WITHIN 90 DAYS</u> of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.

On behalf of the Commission

*Evangeline Hawthorne*                                   8/30/18

| Enclosures(s) | **Evangeline Hawthorne,**<br>**Director** | (Date Mailed) |
|---|---|---|

cc:
| Erin Nguyen,Labor Relations Manager<br>WALT DISNEY PARKS & RESORTS<br>700 W. Ball Road<br>Mail Code 435T<br>Anaheim, CA 92802Mail Code 435T | Matthew Gross, Esq.<br>NEJAME LAW, P.A.<br>189 South Orange Avenue, Suite 1800<br>Orlando, FL 32801 |
|---|---|



EXHIBIT
"A"

Enclosure with EEOC
Form 161 (11/16)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS    --    Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Courts often require that a copy of your charge must be attached to the complaint you file in court. If so, you should remove your birth date from the charge. Some courts will not accept your complaint where the charge includes a date of birth. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS    --    Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice <u>and</u> within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION    --    Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do <u>not</u> relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE    --    All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request <u>within 6 months</u>** of this Notice. (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

# EQUAL EMPLOYMENT OPPORTUNITY

The Company proudly provides equal employment opportunity for all employees and applicants.

The Company proudly provides equal employment opportunity for all employees and applicants and makes employment decisions consistent with this principle.

## EMPLOYMENT DECISIONS

The Company's employment actions and decisions – including recruitment, hiring, promotion, compensation, demotion, transfer, layoff, termination and training – are made without regard to an employee's race, religion, color, sex, pregnancy, sexual orientation, gender, gender identity, gender expression, national origin, ancestry, age, marital status, military or veteran status, medical condition, genetic information or disability (mental or physical). The Company complies with any federal, state or local law that provides for additional categories of protection.

See also the Disability Accommodation policy.

## HARASSMENT

This policy also prohibits harassment based on any of these protected categories. See the Prohibition of Harassment policy for additional detail.

## COMPLAINTS

Employees who believe they have been harassed or discriminated against, or are otherwise aware of a violation of this policy, should follow the procedures outlined in the Complaints section of this Manual. These procedures include notifying a manager, Human Resources, or calling the Company Guideline. The Company will not tolerate retaliation against an employee who has made a good-faith complaint or has cooperated with an investigation into a complaint.

Any employee found to have violated this Equal Employment Opportunity policy will be subject to discipline, which may be termination.



EXHIBIT "B"

February 2016 (U.S.)

# PROHIBITION OF HARASSMENT



Employees are expected to treat others in the workplace with respect.

Employees are expected to treat others in the workplace with respect and must not engage in harassing or bullying behavior. This policy encompasses behavior that is prohibited by law and behavior that, while not necessarily unlawful, nevertheless violates the Company's standards for workplace conduct. The policy applies to the workplace (both on and off Company property) and in other settings in which employees may find themselves in connection with their jobs or that impact the workplace (which can occur after regular work hours or away from the regular workplace).

## HARASSMENT BASED ON A PROTECTED CATEGORY

Harassing conduct that is based on a protected category is prohibited by law, whether committed by supervisors, co-workers, or third parties in the workplace, and will not be tolerated by the Company. "Protected categories" include race, religion, color, sex, pregnancy, sexual orientation, gender, gender identity, gender expression, national origin, ancestry, age, marital status, military or veteran status, medical condition, genetic information, or disability (mental or physical) and any additional category set forth in any federal, state or local law. Conduct that may be considered as contributing to unlawful harassment when based on a protected category includes slurs, offensive jokes or teasing and disparaging comments – whether done in person or phone, by email or text, visual displays, or otherwise. Such

conduct can be unlawful when it is particularly egregious or when it is repeated, creating a hostile working environment and altering the conditions of employment.

Sexual harassment is one form of harassment based on a protected category and prohibited by law and this policy. Hostile environment sexual harassment can include any of the previously mentioned types of conduct as well as offensive touching, staring and stalking, gestures, violating personal space, requests for sexual favors, conversation containing sexual comments and other unwelcome advances. In addition to hostile environment harassment, sexual harassment can take the form of "quid pro quo" harassment, which includes making unwanted sexual advances and/or requests for sexual favors where submission is a condition of employment or where submission to or rejection of the advances or requests is used as the basis for employment decisions.

In addition to co-workers, employees are prohibited from harassing customers, guests, contractors, and any others with whom they interact in their work environment.

While harassment based on a protected category must meet certain legal standards to be unlawful, such as being "severe or pervasive," these standards do not necessarily have to be met for the Company to determine that conduct has violated Company policy. The Company's prohibition of harassment encompasses a broader range of conduct than what is prohibited by law.

February 2016 (U.S.)   Policy updated May 2016

# PROHIBITION OF HARASSMENT
(CONT.)



## BULLYING

Abusive conduct, often referred to as "bullying," is a type of conduct that may not be unlawful but is against Company policy. Bullying need not be related to a protected category. Bullying in the workplace includes repeatedly making derogatory or insulting remarks; intentional targeted isolation; serious or repeated verbal or physical conduct that could reasonably be considered threatening, intimidating or humiliating; or intentionally sabotaging or undermining another's work performance.

## COMPLAINTS AND INVESTIGATIONS

The Company strongly encourages employees to immediately speak up if they are subject to or witness conduct prohibited by this policy. Employees who believe they have been subjected to discrimination, harassment or bullying by a co-worker, guest, or other person in their workplace, or are otherwise aware of a violation of this policy, should follow the procedures outlined in the Complaints section of this Manual. These procedures include notifying a manager, Human Resources, or calling the Company Guideline.

The Company takes reports of discrimination and harassment very seriously. Managers who become aware of possible violations must notify Human Resources or Employee Relations. When the Company receives allegations of misconduct, it will conduct a fair, timely and thorough investigation that provides all parties appropriate due

process and reaches reasonable conclusions based on the evidence collected. Every complaint will be investigated in the manner and to the extent appropriate to the circumstances, and investigations will be conducted as confidentially and expeditiously as possible. Employees have an obligation to cooperate fully and to openly and honestly share information in any Company investigation.

The Company will not tolerate retaliation against an employee who has made a good-faith complaint or has cooperated with an investigation into a complaint. Employees who believe they have been retaliated against should immediately report the conduct, using one of the avenues outlined in the Complaints section of this Manual.

## DISCIPLINE AND OTHER REMEDIAL MEASURES

If an investigation uncovers misconduct, the Company will take appropriate remedial measures. Any employee found to have violated this Prohibition of Harassment policy (including the prohibition of retaliation) will be subject to discipline, which may be termination.

# DRUGS AND ALCOHOL

Employees may not be under the influence of drugs or alcohol while working.

The Company is committed to providing a safe and productive work environment and prohibits employees from being under the influence of drugs or alcohol while working.

## GENERAL RULES

Employees must not report to or remain at work, or otherwise perform work for the Company, while under the influence of alcohol or drugs. The unlawful manufacture, distribution, dispensation, possession or use of drugs is prohibited in the workplace, including on Company property, in any Company-owned, leased or rented vehicle, or while engaged in Company business. Violators will be subject to disciplinary action, which may be termination.

## PRESCRIPTION / OVER-THE-COUNTER DRUGS

Employees who are lawfully using prescription or over-the-counter drugs that they believe may impair their ability to safely perform their job should discuss the issue with HR/ Employee Relations (or Health Services for Parks and Resorts employees) before starting or resuming work.

## MARIJUANA

Although several states have legalized marijuana for medicinal and/or recreational use under state law, it remains prohibited under Federal law and under Company policy. Marijuana use or possession is not permitted on Company property at any time.